# In the United States Court of Federal Claims

No. 17-739C
(Filed: December 21, 2017)

| | |
|---|---|
| KANE COUNTY, UTAH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Keywords: Payments in Lieu of Taxes; Statutory Interpretation; 31 U.S.C. § 6906; Obligations Limited by Appropriations. |

*Alan I. Saltman*, Smith, Currie & Hancock LLP, Washington, DC, for Plaintiffs. *Robert O. Fleming*, Smith, Currie & Hancock LLP, Atlanta, GA, Of Counsel.

*Mark E. Porada*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Claudia Burke*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General. *Tony Irish*, Division of General Law, Office of the Solicitor, Department of the Interior, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

The issues before the Court in this case involve a pure question of statutory interpretation. Plaintiff Kane County is eligible to receive annual payments from the federal government under the Payments in Lieu of Taxes (PILT) program, which the Secretary of the Interior administers pursuant to statutory authority granted him by 31 U.S.C. §§ 6901–07. PILT payments provide compensation to certain units of local government within whose borders lie lands that are owned by the federal government and which are therefore immune to state and local taxation. The statute sets forth specific formulas to calculate the amount of the payment that each eligible unit of local government will receive.

In fiscal years 2015 and 2016, Congress appropriated to the Department of Interior less than the amount necessary to make full PILT payments to all eligible local governments. As a result, the Secretary of the Interior proportionally reduced each eligible jurisdiction's payment amount. Thus, Kane County and the other eligible units of local government each received PILT payments in fiscal years 2015 and 2016 that were less than the amounts due them under the statutory formulas.

Kane County has now filed suit alleging that the federal government owes it and other similarly situated units of local government additional payments under the statute. It has moved for summary judgment prior to any discovery. The government opposes Kane County's motion and has moved to dismiss the complaint for failure to state a claim.

For the reasons set forth below, the Court concludes that the applicable statutory provisions created an obligation on the part of the Secretary of the Interior to pay Kane County the amounts it is owed pursuant to the statutory formulas for fiscal years 2015 and 2016, irrespective of the shortfall in appropriations during those years. Accordingly, the government's motion to dismiss is **DENIED** and Kane County's motion for summary judgment as to the government's liability is **GRANTED**.

## BACKGROUND

**I.   The Statute**

On October 20, 1976, Congress enacted the PILT Act. Pub. L. No. 94-565, 90 Stat. 2662 (codified as amended at 31 U.S.C. §§ 6901–07). The act is designed to "compensate[] local governments for the loss of tax revenues resulting from the tax-immune status of federal lands located in their jurisdictions, and for the cost of providing services related to these lands." Lawrence Cty. v. Lead-Deadwood Sch. Dist. No. 40-1, 469 U.S. 256, 258 (1985).

The PILT Act directs that "the Secretary of the Interior shall make a payment for each fiscal year to each unit of general local government in which entitlement land is located as set forth in this chapter." 31 U.S.C. § 6902(a)(1) (2012).[1] "Entitlement land" is defined to include a variety of lands controlled, protected by, or otherwise under the jurisdiction of the federal government. See id. § 6901(1); see also Lawrence Cty., 469 U.S. at 258 (noting that "'entitlement lands' include wilderness areas, national parks, and lands administered by the

---

[1] A "unit of general local government" is defined, in pertinent part, as:

> [A] county (or parish), township, borough, or city . . . where the city is independent of any other unit of general local government, that—
>
> (I) is within the class or classes of such political subdivision in a State that the Secretary of the Interior, in his discretion, determines to be the principal provider or providers of governmental services within the State; and
>
> (II) is a unit of general government, as determined by the Secretary of the Interior on the basis of the same principles as were used by the Secretary of Commerce on January 1, 1983, for general statistical purposes.

31 U.S.C. § 6901(2)(A).

Bureau of Land Management"). It is undisputed in this case that Kane County was eligible to receive payments under the PILT Act during FY 2015 and FY 2016.

Section 6903 of the statute specifies the amount of the payment to be made to each eligible local government as required by § 6902(a)(1). It states that "[a] payment under section 6902 . . . is equal to the greater of" one of two amounts derived from statutory formulas that are based upon the acreage of entitlement land within the local government's jurisdiction. 31 U.S.C. § 6903(b)(1). The Act also caps the payment amount a local government can receive, notwithstanding the formulas, based upon that jurisdiction's population. Id. § 6903(c).

Historically, the relationship between congressional appropriations and the Secretary's obligation to make PILT payments to eligible units of local government (as specified in §§ 6902 and 6903) had been set by § 6906. Prior to 2008, § 6906 stated that "[n]ecessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter" and that "[a]mounts are available only as provided in appropriation laws." 31 U.S.C. § 6906 (2006). On October 3, 2008, however, Congress amended § 6906, deleting the existing language and providing instead that "[f]or each of fiscal years 2008 through 2012 . . . (1) each county or other eligible unit of local government shall be entitled to payment under this chapter; and (2) sums shall be made available to the Secretary of the Interior for obligation or expenditure in accordance with this chapter." Emergency Economic Stabilization—Energy Improvement and Extension—Tax Extenders and Alternative Minimum Tax Relief, Pub. L. No. 110-343, 122 Stat. 3765 (2008). Congress subsequently amended § 6906 twice more to extend its coverage to FYs 2013 and 2014. Moving Ahead for Progress in the 21st Century Act, Pub. L. No. 112-141, § 100111, 126 Stat. 405, 906 (2012); Agricultural Act of 2014, Pub. L. No. 113-79, § 12312, 128 Stat. 649, 992 (2014). It did not, however, extend the application of § 6906 to subsequent fiscal years. See 31 U.S.C. § 6906 (Supp. IV 2016).

## II.     FY 2015 and FY 2016 PILT Payments

On December 16, 2014, Congress appropriated money for the PILT program for FY 2015 in the Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 5, 128 Stat. 2130, 2133 (2014). The applicable provision states that "[f]or payments in lieu of taxes under chapter 69 of title 31, United States Code, for fiscal year 2015, $372,000,000 shall be available to the Secretary of the Interior." Id. § 11(a), 128 Stat. at 2135. That dollar amount was "in addition to amounts made available for payments in lieu of taxes by the Carl Levin and Howard P. 'Buck' McKeon National Defense Authorization Act for Fiscal Year 2015." Id. § 11(b). Congress passed the latter act three days later, on December 19, 2014. Pub. L. No. 113-291, 128 Stat. 3292. In it, Congress appropriated another $33,000,000 for the PILT program for FY 2015, as well as an additional $37,000,000 "available for obligation and payment beginning on October 1, 2015."[2] See id. § 3096, 128 Stat. at 3882.

---

[2] Congress subsequently amended this provision to reflect that the additional $37,000,000 available beginning October 1, 2015, was nevertheless for FY 2015. See Continuing Appropriations Act, 2016, Pub. L. No. 114-53, § 139, 129 Stat. 502, 510 (2015).

3

The amount of money that Congress appropriated for PILT payments for FY 2015 was insufficient to fund payments in the amounts established by the statutory formulas. A total of $441.6 million was available to the Department of Interior for PILT payments in FY 2015 after the costs of "program administration" were deducted. See U.S. Dep't of Interior, October 2015 Addendum to Fiscal Year 2015 Payments in Lieu of Taxes National Summary 2–3 (2015), https://www.doi.gov/pilt/resources/annual-reports ("2015 PILT Report").[3] The total amount of money owed to eligible local governments according to the statutory formulas, however, was approximately $450.9 million. See id. at 7. As a result, the Department of Interior reduced its PILT payments to eligible units of local government on a pro rata basis. See id.; see also id. at 84.

The amount Congress appropriated for PILT payments in FY 2016—$452 million—was also insufficient to fund the payments at the formula levels. See Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat. 2242, 2541–42 (2015). After administrative expenses, approximately $451.6 million was available for PILT payments to local governments. Id. The total amount owed under the statutory formulas, however, was approximately $459.5 million. U.S. Dep't of Interior, Fiscal Year 2016 Payments in Lieu of Taxes National Summary 8 (2016). Thus, the Department of Interior again reduced its PILT payments to local governments on a pro rata basis. See id.

**III.   This Action**

On June 2, 2017, Kane County filed a complaint in this court on behalf of itself "and on behalf of all others similarly situated." Compl. at 1, ECF No. 1. In its complaint, Kane County alleges that it is a unit of general local government in whose jurisdiction entitlement land is located, making it eligible to receive PILT payments. See id. ¶ 3. It asserts that the federal government violated the statute when it failed to pay Kane County the full amount of PILT payments to which it was allegedly entitled for FYs 2015 and 2016. Id. ¶¶ 18–29.

On June 13, 2017, Kane County moved for summary judgment. ECF No. 5. The government filed an opposition and motion to dismiss on August 3, 2017. ECF No. 10. On September 18, 2017, by leave of the Court, Kane County filed an amended complaint "to correct small numerical errors . . . in [its] original complaint." ECF Nos. 12, 14–15. On September 26, 2017, the Court granted the government's request for an extension of time to answer the amended complaint until after resolution of the parties' motions, and deemed those motions to be with respect to the amended complaint. Order, ECF No. 17. The Court held oral argument on the motions on December 13, 2017. Order, ECF No. 18.

---

[3] Of this amount, $2,500,000 was sequestered. See 2015 PILT Report at 2–4. Kane County does not challenge the government's reduction of its FY 2015 PILT payment due to sequestration. Am. Compl. at 4 n.6, ECF No. 15.

**DISCUSSION**

**I.   Subject Matter Jurisdiction**

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)). In Greenlee County v. United States, 487 F.3d 871, 877 (Fed. Cir. 2007), the court of appeals held that the PILT Act, 31 U.S.C. §§ 6901–07, is "a money-mandating source sufficient to confer jurisdiction on the Court of Federal Claims." Accordingly, the Court has subject matter jurisdiction over Kane County's complaint.

**II.   The Parties' Motions**

As noted, Kane County has moved for summary judgment as to liability, while the government has moved to dismiss Kane County's complaint for failure to state a claim. The material facts are not in dispute and both motions turn upon the same question of law—whether the government was obligated by the PILT Act to make payments to Kane County for FYs 2015 and 2016 in the full amounts determined by the statutory formulas, notwithstanding that the amounts due were not fully funded by congressional appropriations.

For the reasons set forth below, the Court concludes that the federal government was obligated to provide Kane County with PILT payments for FY 2015 and FY 2016 equal to the amounts determined under the statutory formulas. It rejects the government's argument that the Secretary's obligation was limited by Congress' failure to appropriate sufficient moneys to fully fund the PILT program for those fiscal years. Accordingly, the government's motion to dismiss is **DENIED**. And because there are no material facts in dispute, Kane County's motion for summary judgment as to liability is **GRANTED**.[4]

**A.   Principles of Statutory Interpretation**

Statutory interpretation involves a question of law, whose resolution begins (and often ends) with the language of the statute. Rosete v. Office of Pers. Mgmt., 48 F.3d 514, 517 (Fed. Cir. 1995); see also Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002, 1010 (2017) ("We thus begin and end our inquiry with the text."); McGee v. Peake, 511 F.3d 1352, 1356 (Fed. Cir. 2008). A statute's "plain meaning is derived from its text and its structure." McGee,

---

[4] Because, as noted, Kane County does not challenge the government's payment reduction for FY 2015 due to sequestration, the Court's holding does not extend to that portion of the reduction in payments for FY 2015 due to sequestration.

511 F.3d at 1356. Thus, the court may "'look to the provisions of the whole law'" to determine a section's meaning, as the inquiry is not limited to a particular section "in isolation." Star Athletica, L.L.C., 137 S. Ct. at 1010 (quoting United States v. Heirs of Boisdoré, 12 L. Ed. 1009 (1849)). Further, language in a statute, absent instruction to the contrary, is given its "ordinary, contemporary, common meaning." Bilski v. Kappos, 561 U.S. 593, 603 (2010) (quoting Diamond v. Diehr, 450 U.S. 175, 182 (1981)).

Where "Congress has expressed its intention by clear statutory language, that intention controls and must be given effect." Rosete, 48 F.3d at 517 (citing Chevron, U.S.A. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984)). That is, where "statutory language is clear and unambiguous, the inquiry ends with the plain meaning." McGee, 511 F.3d at 1356 (quoting Myore v. Nicholson, 489 F.3d 1207, 1211 (Fed. Cir. 2007)).

### B. The Federal Circuit's Decision in Greenlee County v. United States Regarding the Government's Obligations Prior to FY 2008

As explained above, § 6902(a)(1) states, in pertinent part, that "the Secretary of the Interior shall make a payment for each fiscal year to each unit of general local government in which entitlement land is located as set forth in this chapter." (emphasis added). Section 6903(b)(1) then describes the formulas that are used to determine the amount of the payment the Secretary "shall make" pursuant to § 6902(a)(1). The plain meaning of these sections read together is that the Secretary of the Interior has an obligation to make payments to each eligible unit of local government in an amount determined through the methodology prescribed in the statute.

While the language of §§ 6902 and 6903 has remained relatively stable in substance over the years, the enforceability of the government's obligation to make PILT payments in the amounts prescribed by the statutory formulas has been affected by changes in the language of § 6906. Thus, for fiscal years prior to FY 2008, § 6906 of the PILT Act stated that "[n]ecessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter" and that "[a]mounts are available only as provided in appropriation laws." In Greenlee County, the court of appeals determined that this language modified the payment obligations imposed by §§ 6902 and 6903, limiting the government's obligation to the amount of money that Congress appropriated to fund the PILT program. See 487 F.3d at 877–81.

Thus, in Greenlee County, units of local government filed suit complaining that for FY 1998 through FY 2004 they had received payments that were lower than was required by application of the statutory formulas. Id. at 873–74. The court of appeals agreed with Greenlee County that under the statute the "Secretary of the Interior is required to make annual payments to each unit of general local government in which entitlement land is located." Id. (quoting Lawrence Cty., 469 U.S. at 258). It further agreed that "the amount of payment a unit of local government is entitled to under § 6902 is calculated based on" the formulas in § 6903. Id. at 874 (emphasis added). But notwithstanding this entitlement, the court of appeals observed, § 6906 provided that "[a]mounts [necessary to make the payments] are available only as provided in appropriation laws." Id. The court of appeals concluded that this language modified the government's obligations under §§ 6902 and 6903 to pay Greenlee County the amounts calculated under the statute's formulas. Id. at 878–80.

6

The court observed that there existed a "long . . . established" rule that "the mere failure of Congress to appropriate funds, without further words modifying or repealing, expressly or by clear implication, the substantive law, does not in and of itself defeat a Government obligation created by statute." Id. at 877 (quoting N.Y. Airways, Inc. v. United States, 369 F.2d 743, 748 (Ct. Cl. 1966)). In light of that rule, the court explained, "an unqualified right to compensation should not be deemed abrogated or suspended by subsequent enactments which merely appropriated a less amount . . . for particular fiscal years, and which contained no words that expressly or by clear implication modified or repealed the previous law." Id. (quoting United States v. Langston, 118 U.S. 389, 394 (1886)) (omission in original). Absent such express language or clear implication, the court affirmed, the "rights [of the obligee] [remain] enforceable in the Court of Claims." Id. (quoting N.Y. Airways, Inc., 369 F.2d at 748 (second alteration in original)).

But while the mere failure to appropriate sufficient funds does not relieve the government of a statutory payment obligation, the court observed, there are "instances" where the statutes that create such obligations "may restrict the government's liability or limit its contractual authority to the amount appropriated by Congress." Id. at 878. Those restrictions, the court of appeals explained, are frequently expressed through statutory language that makes an obligation to pay "subject to the availability of appropriations." Id. The court concluded that there was "little functional difference" between statutory language making an obligation "subject to the availability of appropriations," and the language of § 6906 which then provided that "[a]mounts are available only as provided in appropriation laws." Id. The court of appeals thus concluded that "the language of § 6906 limits the government's liability under PILT to the amount appropriated by Congress." Id.; see also Prairie Cty. v. United States, 782 F.3d 685 (Fed. Cir. 2015) (same).[5]

### C.     The Effect of the 2008 Repeal and Replacement of the Former § 6906

As described above, the court of appeals' ruling in Greenlee County limiting the government's obligation to make PILT payments to the amount appropriated by Congress was based on the specific language of the earlier version of § 6906. Section 6906, however, has since been amended to remove the limiting language that was pivotal to the court of appeals' decision. In 2008, as described above, Congress amended § 6906 to state that "each county or other eligible unit of local government shall be entitled to payment under this chapter" and that "sums shall be made available to the Secretary of the Interior for obligation or expenditure in accordance with this chapter." That language, however, applied only to the government's obligations in FY 2008 through FY 2014.

---

[5] In Prairie County, multiple counties brought suit to recover the shortfall in PILT payments in FY 2006 and FY 2007. The court of appeals reaffirmed the interpretation of § 6906 it had set forth in Greenlee County. See 782 F.3d at 686. It again stated that the question before it was "whether the government's liability under PILT is limited by the amount appropriated by Congress." Id. And it again found that "the plain language of the applicable version of § 6906 limits the government's liability under PILT to the amount appropriated by Congress." Id. at 688.

7

But while the current version of § 6906 has no application to FY 2015 and FY 2016, the result of Congress' action in 2008 is that there is no longer any language in the PILT Act (as there was before 2008) that "restrict[s] the government's liability or limit[s] its contractual authority to the amount appropriated by Congress" for those years. See Greenlee Cty., 487 F.3d at 878. Accordingly, there is no textual basis in the PILT Act for finding that Congress modified the government's obligation to make payments at formula levels for FY 2015 or 2016.

Nor is there is any language in the appropriations acts for FY 2015 or FY 2016 that restricts the government's obligation to make full PILT payments. For both 2015 and 2016, Congress merely appropriated specific dollar amounts; it did not include any other language addressing the substantive obligation. See Pub. L. 113-235 § 11, 128 Stat. at 2135; Pub. L. No. 114-113, 129 Stat. at 2541–42. And, as explained above, "the mere failure of Congress to appropriate funds, without further words modifying or repealing, expressly or by clear implication, the substantive law, does not in and of itself defeat a Government obligation created by statute." Greenlee Cty., 487 F.3d at 877; see also Langston, 118 U.S. at 394.

Recognizing that there is no limiting language in the text of the statute or the appropriations acts covering FYs 2015 and 2016, the government seeks support for its position in the legislative history of the 2016 appropriations act. Specifically, it cites the explanatory statement of the Chairman of the House of Representatives' Committee on Appropriations, which contains the observation that the appropriation of $452 million was intended "to fully fund the Payment in Lieu of Taxes (PILT) program for fiscal year 2016." Def.'s Opp'n to Pl.'s Mot. for Summ. J. & Cross-Mot. to Dismiss (Def.'s Opp'n) at 17, ECF No. 10 (quoting 161 Cong. Rec. H10161-01 (daily ed. Dec. 17, 2015) (statement of Rep. Rogers)). The government asserts that this statement reflects congressional intent that the appropriation would "fully satisfy the PILT program payment obligations for fiscal year 2016, regardless of whether the statutory formula calculations under section 6903(b)(1) would have resulted in a different or greater payment." Id.

But legislative history cannot be employed to supply words that are not contained in the statute itself. "[L]egislative history itself is not binding . . . and does not 'ha[ve] the force of law, for the Constitution is quite explicit about the procedure that Congress must follow in legislating.'" Thompson v. Cherokee Nation of Okla., 334 F.3d 1075, 1085 (Fed. Cir. 2003) (quoting Am. Hosp. Ass'n v. Nat'l Labor Relations Bd., 499 U.S. 606, 616 (1990)), aff'd sub nom. Cherokee Nation of Okla. v. Leavitt, 543 U.S. 631 (2005). Therefore, in order for a limit on an obligation to be binding "it must be carried into the legislation itself; [it] cannot be imposed by statements in committee reports or other legislative history." Id.

Further, and in any event, the phrase contained in the Chairman's statement—which speaks of Congress's intent to "fully fund" PILT payments for 2016 through the amounts appropriated—bears no similarity to statutory language that makes an obligation "subject to the availability of appropriations." To the contrary, the phrase is reasonably read as representing the opposite conclusion—i.e., a belief (or expectation) that the amount Congress had appropriated would be adequate to cover the amounts to which local governments were entitled under the

statutory formulas. The articulation of that expectation does not speak to the extent of the obligation itself or to the question of what will happen if the expectation is not realized.[6]

The government also argues that Congress' failure to extend the current version of § 6906 to FY 2015 and FY 2016 reflects an intent to resurrect the pre-FY 2008 regime under which the government's obligation was subject to the availability of appropriations. Specifically, it contends that the FY 2008–FY 2014 version of § 6906 converted the PILT program "into a direct spending program for a limited number of years" and "provide[d] full appropriations authority . . . through the program's authorizing legislation." Def.'s Opp'n at 14. It further asserts that by failing to extend that direct spending authority beyond FY 2014, Congress "returned [the PILT program] to the status that it held . . . as a discretionary spending program where Congress would determine how much appropriations authority to allocate to the program on a year-by-year basis." Id. at 16. According to the government, it thereby "achieved the same result" as if it had expressly "reenact[ed] the language of § 6906 in effect prior to October 2008 . . . that '[a]mounts are available only as provided in appropriation laws.'" Id. (also stating that "the only logical conclusion is that Congress expected and intended that payments under the PILT program in fiscal years 2015 and 2016 would be capped at whatever amounts Congress chose to appropriate for the program in those years").

The government's argument is untenable. It is urging the Court to read the current statute as though it still contained the limiting language that Congress repealed in October of 2008; in other words, the government asks the Court to find that Congress resurrected a repealed provision of law by implication when it failed to extend the amended version of § 6906 beyond FY 2014. It is well established, of course, that repeals by implication are not favored. E.g., Hui v. Castaneda, 559 U.S. 799, 810 (2010); see also United States v. Fausto, 484 U.S. 439, 452–53 (1988) (stating that the Court "agree[s] with the principle" that "repeals by implication are strongly disfavored"). And if the law strongly disfavors repeals by implication, it is inconceivable that it would ever permit reenactments of statutory language by implication. Indeed, the government does not cite a single case that supports the resurrection of a repealed provision of law by implication.[7]

---

[6] As Kane County notes, Congress appropriated funds for PILT based on estimates prepared before the Department of Interior was able to calculate actual payment amounts under the formulas. Pls.' Reply to Gov't's Opp'n to Pls.' Mot. for Summ. J. & Resp. to Gov't's Cross-Mot. to Dismiss at 11–12, ECF No. 11 (citing Lynne Corn, Congressional Research Service, PILT (Payments in Lieu of Taxes): Somewhat Simplified 14 (2015)). The shortfall may therefore be attributable to inaccuracies in the initial estimates.

[7] The government also appears to argue that absent the language contained in § 6906 of the Act as amended in 2008 (stating that "each county or other eligible unit of local government shall be entitled to payment under this chapter"), the PILT Act imposes no obligation on the Secretary of the Interior to make payments to eligible local governments in any particular amount. See Def.'s Opp'n at 11–15. This argument fails because Kane County's entitlement to have its PILT payments determined under the statutory methodology is not based on the now-expired § 6906; as explained above, it is based on the language in § 6902, which provides that the Secretary "shall make a payment for each fiscal year" to eligible units of local government, and the

Finally, the Court finds equally unpersuasive the government's argument that the PILT Act is ambiguous, and that the Court should therefore defer to the Department of Interior's regulation as controlling the extent of its obligation to make PILT payments in the event of an appropriations shortfall. Def.'s Opp'n at 23–24 (citing, among others, Chevron, U.S.A., Inc., 467 U.S. at 843). The regulation upon which the federal government relies, 43 C.F.R. § 44.51(b), states that "[i]f Congress appropriates insufficient monies to provide full payment to each local government during any fiscal year, the Department will reduce proportionally all payments in that fiscal year." See 43 C.F.R. § 44.51(b) (2016). But this regulatory language has been in existence since at least 2000. See Financial Assistance, Local Governments, 65 Fed. Reg. 51,229-03 (Aug. 23, 2000). The regulation thus implemented the version of § 6906 at issue in Greenlee County, which has since been repealed. Finally, and in any event, the Court has concluded that the language of the statute is clear, not ambiguous. Thus, it would owe no deference to the Interior regulation under Chevron even if the regulation did purport to interpret the current statutory language.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

To summarize, the material facts are not in dispute. Further, the Court finds that the PILT Act (at §§ 6902 and 6903) obligates the federal government to make payments to each eligible unit of local government at the levels specified therein. It further finds that there is no language in the statute or the appropriations acts purporting to link these obligations to the amount of congressional appropriations in FY 2015 or FY 2016. Kane County is, accordingly, entitled to judgment as a matter of law as to its claim that it did not receive moneys to which it was statutorily entitled for FYs 2015 and 2016.

## CONCLUSION

Based on the foregoing, the government's motion to dismiss is **DENIED** and Kane County's motion for summary judgment as to the government's liability is **GRANTED**. The parties shall file a joint status report on or before **January 16, 2018**, proposing further proceedings in this case.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

---

language of § 6903(b)(1), which specifies that "a payment under section 6902 is equal to" the greater of one of the two amounts derived through application of the statutory formulas. Indeed, it was precisely because §§ 6902 and 6903 created such a payment obligation that the court of appeals found it necessary in Greenlee County to examine whether the pre-2008 version of § 6906 modified that obligation.