# In the United States Court of Federal Claims

Nos. 17-739C; 17-1991C (Consolidated)
(Filed: March 20, 2018)

| | |
|---|---|
| KANE COUNTY, UTAH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Keywords: PILT Act; Appropriations Acts; Government Obligations; Underfunding. |

*Alan I. Saltman*, Smith, Currie & Hancock LLP, Washington, DC, for Plaintiffs. *Robert O. Fleming, Jr.*, Smith, Currie & Hancock LLP, Atlanta, GA, Of Counsel.

*Mark E. Porada*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Claudia Burke*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, for Defendant. *Tony Irish*, Division of General Law, Office of the Solicitor, Department of the Interior, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

In these consolidated cases, Plaintiff Kane County, Utah alleges that the Secretary of the Interior violated federal law when, during three fiscal years, he failed to pay eligible units of local government the full payments to which they were entitled under the Payments in Lieu of Taxes (PILT) program, 31 U.S.C. §§ 6901–07. On December 21, 2017, this Court entered summary judgment for Kane County in case number 17-739C, which concerns underpayments for fiscal years 2015 and 2016. Kane Cty. v. United States (Kane Cty. I), No. 17-739C, 2017 WL 6603446 (Fed. Cl. Dec. 21, 2017). It held that §§ 6902 and 6903 of the PILT Act created an obligation for the Department of the Interior to pay Kane County and other similarly-situated units of local government the full payments to which the PILT Act entitled them for FYs 2015 and 2016, irrespective of a shortfall in the appropriations funding those payments.

Shortly after this Court entered summary judgment in No. 17-739C, Kane County filed a complaint in No. 17-1991C, challenging the Secretary's failure to provide full PILT payments for FY 2017. Currently before the Court are Kane County's motion for summary judgment and the government's cross-motion to dismiss for failure to state a claim in that case. The cross-motions raise a single legal issue: whether the government's obligations under the PILT Act

were modified as a result of language in the Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, 131 Stat. 135 (2017) (hereinafter the 2017 Appropriations Act), stating that "in the event the sums appropriated for any fiscal year for payments pursuant to [the PILT Act] are less than the full payments to all units of local government, then the payment to each local government shall be made proportionally." 131 Stat. at 452.

For the reasons set forth below, the Court concludes that the relevant language in the 2017 Appropriations Act did not relieve the federal government of its obligation to provide Kane County with the full payment to which it is entitled under the PILT Act. Accordingly, Kane County's motion for summary judgment as to liability is **GRANTED** and the government's motion to dismiss is **DENIED**.

## BACKGROUND

### I.      The PILT Act

As described in greater detail in Kane County I, the PILT Act is a federal statute that is designed to "compensate[] local governments for the loss of tax revenues resulting from the tax-immune status of federal lands located in their jurisdictions, and for the cost of providing services related to these lands." Lawrence Cty. v. Lead-Deadwood Sch. Dist. No. 40-1, 469 U.S. 256, 258 (1985). Section 6902 of the Act requires the Secretary of the Interior to make a payment every year to "each unit of general local government in which entitlement land is located." 31 U.S.C. § 6902(a)(1). The amount of the payment is determined by certain formulas set out in § 6903. Kane Cty. I, 2017 WL 6603446, at *2, *4; see also 31 U.S.C. § 6903(b)(1).

Before FY 2008, § 6906 capped the government's PILT obligations at the amount appropriated each year by Congress, notwithstanding the formulas in § 6903. Kane Cty. I, 2017 WL 6603446, at *4 (citing Greenlee Cty. v. United States, 487 F.3d 871, 877–81 (Fed. Cir. 2007)). Where appropriations fell short during this period, payments to eligible local governments were to be reduced proportionally pursuant to 43 C.F.R. § 44.51(b), which provides that "[i]f Congress appropriates insufficient monies to provide full payment to each local government during any fiscal year, the Department will reduce proportionally all payments in that fiscal year."

Section 6906 was amended in 2008. Based on that amendment, and two subsequent extensions, § 6906 directly appropriated the amount necessary to make full PILT payments each fiscal year for FYs 2008 through 2014. See Kane Cty. I, 2017 WL 6603446, at *2; see also 31 U.S.C. § 6906.

Since FY 2015, the PILT program has again been funded through the regular appropriations process. And in Kane County I, the Court held that "[t]he plain meaning of [§§ 6902(a)(1) and 6903(b)(1)] read together is that the Secretary of the Interior has an obligation to make payments to each eligible unit of local government in an amount determined through the methodology prescribed in the statute." 2017 WL 6603446, at *4. It further found that there was no language either in the current version of the PILT Act or in the appropriations acts for FY 2015 or FY 2016 that modified the government's obligation to make full PILT payments. See id. at *6. Accordingly, the Court held that the current version of the statute

mandated that the government pay eligible units of local government their full formula amounts, notwithstanding a shortfall in appropriations in FYs 2015 and 2016. Id. at *8.

## II.     The Impact of the 2017 Appropriations Act on PILT Beneficiaries

For FY 2017, Congress appropriated $465,000,000 to fund PILT payments. 131 Stat. at 457. Additionally, in a section of the 2017 Appropriations Act entitled "Administrative Provisions," Congress designated $400,000 of that amount for administrative expenses, barred all payments for formula amounts less than $100, and authorized and appropriated amounts necessary to correct calculation errors from the previous fiscal year. Id. at 451–52. Finally, and as pertinent here, the 2017 Appropriations Act's administrative provision provides that "in the event the sums appropriated for any fiscal year for payments pursuant to [the PILT Act] are less than the full payments to all units of local government, then the payment to each local government shall be made proportionally." Id. at 452.

The Department of the Interior calculated that under the § 6903 formulas, eligible local governments were entitled to receive a total of $465,351,037 in § 6902 PILT payments for FY 2017. Compl. ¶ 22, ECF No. 1; see also U.S. Dep't of Interior, Fiscal Year 2017 Payments in Lieu of Taxes National Summary 8 (2017). Therefore, there was a slight shortfall in the amount of money Congress appropriated to fund the PILT program for FY 2017. The Secretary of the Interior accordingly reduced eligible recipients' payments on a proportional basis, as required by the 2017 Appropriations Act, so that each received approximately 99.7% of its formula entitlement. See Compl. ¶¶ 23–26; Fiscal Year 2017 Payments in Lieu of Taxes National Summary 8. As a result, Kane County was paid $1,102,628, i.e., $3,162 less than the $1,105,790 it was entitled to receive under the statutory formulas. Compl. ¶ 25; Fiscal Year 2017 Payments in Lieu of Taxes National Summary 102.

## III.    This Action

On December 20, 2017, Kane County filed its complaint in case number 17-1991C. ECF No. 1. Shortly afterwards, on December 29, 2017, it filed its motion for summary judgment as to liability. ECF No. 5. The Court consolidated case number 17-1991C with case number 17-739C on January 3, 2018. ECF No. 7. On January 26, 2018, the government filed its response and cross-motion to dismiss. ECF No. 10. The parties subsequently filed reply briefs and oral argument was held on the cross-motions on March 15, 2018.

## DISCUSSION

## I.     Subject Matter Jurisdiction

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive law . . . creates the right

to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)). In Greenlee County, the court of appeals held that the PILT Act, 31 U.S.C. §§ 6901–07, is "a money-mandating source sufficient to confer jurisdiction on the Court of Federal Claims." 487 F.3d at 877. Accordingly, the Court has subject matter jurisdiction over Kane County's complaint.

## II.    The Merits

As noted above, the issue currently before the Court is whether the 2017 Appropriations Act modified the Secretary's obligation in FY 2017 to make PILT payments at the statutory formula amounts. For the reasons set forth below, the Court finds that it did not, and that Kane County is therefore entitled to recoup the amount by which it was underpaid in this Court. See id. (stating that "[r]ather than limiting the government's obligation, a 'failure [of Congress] to appropriate funds to meet statutory obligations prevents the accounting officers of the Government from making disbursements, but such rights [remain] enforceable in the Court of Claims'" (second and third alterations in original) (quoting N.Y. Airways, Inc. v. United States, 369 F.2d 743, 748 (Ct. Cl. 1966))).

As the Court noted in Kane County I, it is a 'long . . . established' rule that 'the mere failure of Congress to appropriate funds, without further words modifying or repealing, expressly or by clear implication, the substantive law, does not in and of itself defeat a Government obligation by statute.'" 2017 WL 6603446, at *5 (omission in original) (quoting Greenlee Cty., 487 F.3d at 877). Further, because amending substantive legislation in an appropriations act is "considered undesirable," Congress must "clearly manifest" an intent to do so in the appropriations act. N.Y. Airways, Inc., 369 F.2d at 749; see also United States v. Will, 449 U.S. 200, 221–22 (1980) (observing that "'repeals by implication are not favored'" and that "[t]his rule applies with especial force when the provision advanced as the repealing measure was enacted in an appropriations bill" (first quoting Posadas v. Nat'l City Bank, 296 U.S. 497, 503 (1936), and then citing TVA v. Hill, 437 U.S. 153, 190 (1978))); Greenlee Cty., 487 F.3d at 877 (holding that "an unqualified right to compensation 'should not be deemed abrogated or suspended by subsequent enactments which merely appropriated a less amount . . . for particular fiscal years, and which contained no words that expressly or by clear implication modified or repealed the previous law'" (omission in original) (quoting United States v. Langston, 118 U.S. 389, 394 (1886))).

Applying these principles, the Supreme Court has found that language in appropriations acts stating that the amount appropriated is "in full" or "in full compensation" for a federal obligation eliminates any further obligation beyond the amount appropriated for that fiscal year. See Langston, 118 U.S. at 390–92. And, as the court of appeals noted in Greenlee County, language making an obligation "subject to the availability of appropriations" may also have the effect of limiting statutory obligations under benefits programs like the PILT program. 487 F.3d at 878.

The 2017 Appropriations Act does not contain language that expressly modifies the entitlements created by the PILT Act. It does not provide that the Secretary's obligation to make payments is "subject to the availability of appropriations" or that "amounts are available only as provided in appropriations laws." Nor does it state that the amount appropriated shall be in full

payment of the obligations imposed by the PILT Act. Instead, the 2017 Appropriations Act, in a section entitled "Administrative Provisions," contains language similar to that contained in the Secretary's regulations, which concern how to administer the funds appropriated in the event that they are insufficient to meet the obligations imposed by the PILT Act. Compare 131 Stat. at 452 (stating that "in the event the sums appropriated for any fiscal year for payments pursuant to [the PILT Act] are less than the full payments to all units of local government, then the payment to each local government shall be made proportionally") with 43 C.F.R. § 44.51(b) (providing that "[i]f Congress appropriates insufficient monies to provide full payment to each local government during any fiscal year, the Department will reduce proportionally all payments in that fiscal year").

Nor does the legislative language modify the PILT Act's entitlements by clear implication because it is entirely possible to harmonize §§ 6902 and 6903 with the relevant language in the 2017 Appropriations Act. See Langston, 118 U.S. at 394 (finding that a modification of the underlying obligation would clearly be implied "by such provisions as would compel the courts to say that harmony between the old and new statutes is impossible" and rejecting any such modification in that case because, inter alia, "there [was no] positive repugnancy between the old and the new statutes"). The provisions here are reconciled by recognizing that the Administrative Provisions section of the 2017 Appropriations Act addresses the potential problem in administering the PILT program where there is an unintentional shortfall in appropriations.

Thus, when Congress makes its appropriations decisions, it must necessarily rely upon estimates which may ultimately differ from the Secretary's calculation of the actual final payments that are due to eligible local governments for that fiscal year. See Explanatory Statement Submitted by Mr. Frelinghuysen of New Jersey, Chairman of the House Committee on Appropriations, 163 Cong. Rec. H3327-01, H3882 (daily ed. May 3, 2017) (noting the Department's provision of a PILT estimate during the formulation of the FY 2017 budget); see also Kane Cty. I, 2017 WL 6603446, at *6 n.6. It is thus to be expected that the amount initially appropriated may fall short of the amount needed for full funding of the obligations to at least some degree. Indeed, the Secretary's estimates have fallen slightly short of the actual full formula amounts in each of the last three fiscal years since the expiration of the direct funding mechanism of § 6906. See Fiscal Year 2017 Payments in Lieu of Taxes National Summary 8; U.S. Dep't of Interior, Fiscal Year 2016 Payments in Lieu of Taxes National Summary 8 (2016); U.S. Dep't of Interior, October 2015 Addendum to Fiscal Year 2015 Payments in Lieu of Taxes National Summary 1–5 (2015). The requirement that in such circumstances the Secretary make proportional reductions in PILT payments addresses this fact of doing business.

Moreover, there is nothing at all in the legislative history surrounding the 2017 Appropriations Act that suggests that Congress intended to modify the federal government's substantive obligation to provide eligible local governments with PILT payments at the formula amounts. See Thompson v. Cherokee Nation of Okla., 334 F.3d 1075, 1085 (Fed. Cir. 2003) (stating that "legislative history can be used as an interpretive guide to determine whether language in an appropriations act constitutes a statutory cap"), aff'd, 543 U.S. 631 (2005); see also Will, 449 U.S. at 222–24 (citing legislative history supporting congressional intent to rescind raises through language in appropriations act); United States v. Dickerson, 310 U.S. 554, 561 (1940) (relying upon legislative history of appropriations acts to show Congress's intent to

suspend payment of reenlistment allowance). To the contrary, to the extent that it speaks to the issue at all, the legislative history suggests that Congress intended the payments to be fully funded.

Thus, in the act's explanatory statement, the Chairman of the House Committee on Appropriations explained that the amount appropriated, $465 million, was "determined by the most recent Department of the Interior calculation."[1] 163 Cong. Rec. at H3882. He also stated his understanding that "[f]ull funding for the Payments in Lieu of Taxes (PILT) program for fiscal year 2017 is included." Id. Further, the Chairman stated that House Report 114-632 and Senate Report 114-281 "provid[ed] specific guidance . . . regarding the administration of appropriated funds" and should carry "the same emphasis as the language included in this explanatory statement." Id. at H3874. That House Report stated that "[t]he [Appropriations] Committee includes bill language providing full PILT funding for fiscal year 2017." H.R. Rep. No. 114-632, at 5 (2016); see also id. at 49 (recommending "$480,000,000 to fully fund the Payments in Lieu of Taxes (PILT) program for fiscal year 2017"); id. (stating again that "[t]he Committee has included bill language providing full funding for the Payments in Lieu of Taxes (PILT) program for fiscal year 2017"). The referenced Senate Report also reflected that same intent: it noted that the proposed appropriation act "provide[d] a total appropriation of $480,000,000 for Payments in Lieu of Taxes [PILT]," which was "$28,000,000 above the enacted level and sufficient to fully fund estimated payments for the fiscal year." S. Rep. No. 114-281, at 56 (2016).

Similar views are reflected in the floor debate. When an amendment was offered to reduce PILT funding by approximately $13 million for FY 2017, Representative Calvert noted his opposition, stating that "PILT is fully funded in this bill." See 162 Cong. Rec. H4750-02, H4752 (daily ed. July 12, 2016). The House then defeated the amendment. Id. Thus, this legislative history reflects Congress's belief that it was fully funding the PILT program. It contains no evidence that Congress intended to provide less than full funding or to limit the government's obligation to the amount appropriated based on the Secretary's preliminary estimate.

The cases cited by the government in support of its argument that the 2017 Appropriations Act modified the obligations contained in the PILT Act are distinguishable. In Dickerson, for example, the underlying statute provided that service members who reenlisted within ninety days of their discharges would be paid an enlistment allowance. 310 U.S. at 554–55. In 1937, Congress passed an appropriations statute which stated that "no part of any appropriation contained in this or any other Act for the fiscal year [at issue] shall be available for the payment of [an] enlistment allowance to enlisted men for reenlistment . . . notwithstanding the applicable provisions [of the act establishing the reenlistment allowance]." Id. at 556–57. The Court concluded that this language, coupled with clear and consistent legislative history,

---

[1] The Chairman, Rep. Frelinghuysen, also noted that this more recent estimate from the Department was less than the Department's initial budget proposal (and earlier drafts of the PILT appropriation) because of the length of time that had passed since that initial calculation, which allowed for a more accurate consideration of factors such as inflation. 163 Cong. Rec. at H3882.

"suspend[ed] the enlistment allowance authorized" by statute for the fiscal year at issue. See id. at 561.

To state the obvious, the language of the 2017 Appropriations Act bears no resemblance to the clear and express language of the statute at issue in Dickerson. As noted, the latter specified that "no part of any appropriation contained in this or any other Act for the fiscal year [at issue] shall be available" to fund the allowance. It contained a "notwithstanding" clause that explicitly referenced the enlistment allowance statute. And it was also coupled with clear, supportive legislative history that expressly reflected Congress's intent to continue a suspension of the enlistment allowance entitlement that had been in place for the preceding several years.

Similarly clear legislative intent was revealed by the language at issue in United States v. Will. That case concerned the effect of an appropriations act that provided that "[n]o part of the funds appropriated in this Act or any other Act shall be used to pay the salary of an individual in a position or office referred to in section 225(f) of the Federal Salary Act of 1967 . . . at a rate which exceeds the salary rate in effect on September 30, 1976, for such position or office . . . ." See 449 U.S. at 205–06 (omission in original) (quoting Legislative Branch Appropriation Act, Pub. L. No. 94-440, 90 Stat. 1439 (1976)). The clear import of this language was supported by legislative history that contained passages that "indicate[d] clearly that Congress intended to rescind these raises entirely, not simply to consign them to the fiscal limbo of an account due but not payable." Id. at 224. No such clear language or legislative history exists here with respect to the PILT Act.

Finally, Highland Falls-Fort Montgomery Central School District v. United States, 48 F.3d 1166 (Fed. Cir. 1995), which the government contends "should control the outcome of this case," ECF No. 10 at 20, is also unhelpful to the government's argument. At issue in Highland Falls was the interplay between § 240(c) of the Impact Aid Act and certain appropriations laws. See id. at 1168–69. Section 237 of the Impact Aid Act gave the Secretary of Education the authority to provide payments to school districts where he found that the federal government's acquisition of property had "placed a substantial and continuing financial burden" on the district and that the district was "not being substantially compensated for the loss in revenue from such acquisition." Id. at 1168 (quotation omitted). The Impact Aid Act also set forth two additional entitlements at §§ 238 and 239.[2] Id. And most pertinent to the issues before the court of appeals in Highland Falls was § 240(c), which contained the methodology for determining the effect of a failure by Congress to appropriate sufficient moneys to fully fund the three entitlements. It provided that if any lump sum appropriation made to fund the entitlements was insufficient to pay all three during any fiscal year, then the Secretary was to allocate the appropriation to prioritize § 237 entitlements so that they would receive full funding. See id. (noting that "§ 240(c) specifies that § 237 shall be funded at 100% of entitlements in those fiscal years in

---

[2] Section 238 provided an entitlement for districts that educate children of persons who reside and work on federal property and § 239 provided for payments to districts that incur a sudden and substantial increase in attendance by school children. Highland Falls-Ft. Montgomery Cent. Sch. Dist., 48 F.3d at 1168.

which the total amount appropriated by Congress is insufficient to fund all entitlements under the Act").

The complaint in <u>Highland Falls</u> arose out of Congress's decision for FY 1989 through FY 1993 to earmark funds for each of the three entitlement programs, rather than making single lump sum appropriations for all three. <u>Id.</u> at 1169. During those years, § 237 recipients did not receive their full entitlement amounts. <u>See id.</u> Instead, the Secretary of Education funded each entitlement at the level specified in the earmarks, limiting the recipients' payments accordingly. <u>Id.</u>

The plaintiff in <u>Highland Falls</u>, a school district that did not receive its full entitlement under § 237, brought suit seeking compensation based on the alleged underpayment. <u>Id.</u> The issue before the Federal Circuit was "whether, in the face of underfunding by Congress, DOE erred in allocating funds for § 237 entitlements based upon the amounts earmarked for that section in the respective appropriations laws, instead of funding § 237 entitlements at 100% in accordance with § 240(c)" of the Impact Aid Act. <u>Id.</u> at 1170.

The court of appeals concluded that the Department of Education did not err in not fully funding § 237 entitlements where Congress earmarked specific amounts for §§ 237, 238 and 239 during the years at issue. <u>See id.</u> at 1170–71. It observed that it had "great difficulty imagining a more direct statement of congressional intent [regarding the funding of § 237 entitlements] than the instructions in the appropriations statute at issue here." <u>Id.</u> at 1170. Moreover, its conclusion that § 237 payments would be limited by the amount earmarked for those payments by Congress was compelled by two other statutory provisions, which restrict agency authority with respect to the allocation of appropriated funds, 31 U.S.C. §§ 1341(a)(1)(A) and 1532. <u>Id.</u> at 1171.[3]

The court stated that, if possible, § 240(c) of the Impact Aid Act should be read as being consistent with the FY 1989 through FY 1993 appropriations acts and with Title 31. <u>Id.</u> (observing that "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective" (quoting <u>Morton v. Mancari</u>, 417 U.S. 535, 551 (1974))). Thus, it found that the Secretary of Education's approach was consistent with this principle because it "gave effect to § 240(c) by applying that provision when an appropriations law provided a lump-sum appropriation not specifically earmarked for various sections of the Act" and also "gave effect to the funding decisions of Congress, which earmarked specific amounts for § 237 entitlements." <u>Id.</u> It "also harmonized the requirements of the Act and the appropriations statutes with the requirements of 31 U.S.C. §§ 1341(a)(1)(A) and 1532." <u>Id.</u>

<u>Highland Falls</u> does not assist the government's position here; in fact, the case is inapposite. In <u>Highland Falls</u>, the court of appeals did not rule that the earmarks in the appropriations acts modified the Secretary of Education's payment obligations under § 240(c) (or

---

[3] Section 1341(a)(1)(A) prohibits an officer or employee of the federal government from making or authorizing an expenditure in excess of the amount available for such an expenditure in an appropriations act. Section 1532 precludes an agency from withdrawing funds from one appropriation account and crediting them to another, unless authorized by law.

under the entitlement itself, § 237) as the government contends occurred here with respect to the Secretary of the Interior's obligations under the PILT Act. To the contrary, cognizant of the principle that it is the duty of the court to reconcile apparently conflicting statutory provisions, the court concluded that the priority funding mechanism for § 237 entitlements that was set forth in § 240(c) was not applicable in years when Congress earmarked funds for the entitlement programs. See id. It held that § 240(c) only applied where Congress used a lump sum appropriation that covered all three programs. See id. Here, there is no alternative allocation method, like § 240(c), upon which Kane County relies. And more importantly, the court's command that provisions of law not be read to conflict whenever possible dictates that the language in the 2017 Appropriations Act be read only as administrative guidance for the Department and not in conflict with the clear entitlement to full formula payments under §§ 6902–03.

In short, the cases the government cites in support of its arguments are either distinguishable or inapposite. The 2017 Appropriations Act does not explicitly cap or partially repeal the government's PILT Act obligations for FY 2017, nor does it clearly imply or manifest such an intent. Accordingly, as in Kane County I, the government was obligated to pay Kane County its full statutory formula amount under the PILT program for FY 2017. It failed to do so, and Kane County is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss is **DENIED** and Kane County's motion for summary judgment as to liability is **GRANTED**. The parties shall file a joint status report within **fourteen days** proposing a schedule for further proceedings in these consolidated cases.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge